## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. LKG-21-158** |
| | * | |
| **ELIJAH GREENE-PARKER,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| | ****** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The Government hereby submits this memorandum in aid of sentencing the Defendant, Elijah Greene-Parker, scheduled for Tuesday, May 27, 2025 at 2:30 p.m. The Defendant pleaded guilty to Counts One, Five, and Six of an Indictment filed against him charging Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a), Carjacking, in violation of 18 U.S.C. § 2119(1), and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c). (ECF no. 11.)

The Government respectfully submits that a sentence of 84 months' imprisonment on Count One, 84 month's imprisonment on Count Five, to run concurrently with Count One, and 84 months' imprisonment on Count Six, to run consecutive to all other counts, is the appropriate term of imprisonment in this matter consistent with 18 U.S.C. § 3553(a). The Government further requests 5 years of supervised release, $4,850 in restitution, and a $300 special assessment.

## FACTUAL BACKGROUND

***Facts Regarding the Instant Offense, as Agreed to in the Plea Agreement's Statement of Facts:***

On January 31, 2021, at approximately 2:25 p.m., the Defendant, **ELIJAH GREENE-PARKER** ("GREENE-PARKER"), and two co-conspirators entered Business 2 in Silver Spring, Maryland to commit a robbery. **GREENE-PARKER** was armed with a black semi-automatic handgun and was wearing a mask, a black winter coat with a hood and a Canada Goose brand patch on the left sleeve, and tan boots with the tongues hanging over the laces. One of the co-conspirators was armed with an assault-style rifle with an extended capacity magazine and foregrip.

1

**GREENE-PARKER** and the other armed co-conspirator pointed their guns at the employees of Business 2 and ordered them to the ground. **GREENE-PARKER** and the two co-conspirators stole approximately $350 of Business 2's proceeds from the register and demanded to know the location of the safe. The employees stated they did not have access to the safe. **GREENE-PARKER** and the two co-conspirators took a cellphone from Victim 1, an employee, and a wallet from Victim 2, another employee. **GREENE-PARKER** and the two co-conspirators fled the scene in a stolen black Audi Q3 SUV bearing a Virginia paper temporary registration.

On the same date at approximately 3:25 p.m., **GREENE-PARKER** and the two co-conspirators, carrying the same weapons and wearing the same clothing from the robbery of Business 2, entered Business 3 in Washington, D.C. to commit another armed robbery. Once inside, **GREENE-PARKER** and the two co-conspirators robbed the lone store employee (Victim 3) of the store's proceeds at gunpoint. **GREENE-PARKER** and the two co-conspirators walked behind the counter and ordered Victim 3 to open the register. **GREENE-PARKER** and the two co-conspirators forced Victim 3 into a back office and told him to lay down on the ground. **GREENE-PARKER** and the two co-conspirators removed approximately $200 of Business 3's proceeds from the cash register, as well as a bag of chips from a display shelf and fled the scene.

On the same date at approximately 4:41 p.m., **GREENE-PARKER** and the two co-conspirators, again wearing the same clothing and carrying the same firearms, entered Business 4 in Prince George's County, Maryland. **GREENE-PARKER** and the two co-conspirators demanded that the employees (Victim 4, Victim 5, and Victim 6) open the register and ordered Victim 4, Victim 5, and Victim 6 to the ground. When **GREENE-PARKER** and the two co-conspirators demanded to know the location of the safe, the victims advised that they did not have access to it. **GREENE-PARKER** and the two co-conspirators stole cellphones from Victim 4, Victim 5, and Victim 6 and then took approximately $4,000 of Business 4's proceeds from the registers. Surveillance video captured **GREENE-PARKER** and the two co-conspirators fleeing after the robbery in the same black Audi Q3.

Law enforcement obtained surveillance video from **GREENE-PARKER**'s residence, an apartment complex in Washington, D.C. The video shows—on January 31, 2021, at 4:46 p.m., minutes after the robbery of Business 4—the same black Audi Q3 getaway vehicle as seen from Business 4's surveillance video—stop in front of **GREENE-PARKER**'s apartment complex. The co-conspirator who carried the rifle during the three previous robberies got out of the vehicle and entered the apartment complex carrying a tennis bag. The Audi parked behind the building and **GREENE-PARKER**, wearing the same clothing from the prior robbery of Business 2, Business 3, and Business 4, exited the vehicle, along with the other third participant in the robberies.

On February 5, 2021, at approximately 1:15 a.m., **GREENE-PARKER** and Co-Conspirator 1 entered Business 1, located in Silver Spring, Maryland. Co-Conspirator 1 and **GREENE-PARKER** selected items from the shelves and then walked to the counter. Co-Conspirator 1 grabbed Victim 7, an employee of Business 1, by Victim 7's shirt, struck Victim 7 in the head, led Victim 7 behind the counter, and forced Victim 7 to his knees. Co-Conspirator 1 then brandished a black semiautomatic handgun and ordered Victim 7 and Victim 8, another employee, to open the cash register. **GREENE-PARKER** joined Co-Conspirator 1 behind the counter. Victim 8 opened the cash register, and Co-Conspirator 1 and **GREENE-PARKER** removed approximately $300 from the cash register and fled. Officers with the Montgomery County Police Department ("MCPD") responded to the scene, interviewed the victims, processed the scene for evidence, and obtained and

2

reviewed video surveillance footage of **GREENE-PARKER** and Co-Conspirator 1 committing the robbery.

Also on February 5, 2021, at approximately 4:57 p.m., in Alexandria, Virginia, three suspects carjacked at gunpoint a dark gray Volkswagen Tiguan with Pennsylvania registration plates ("Volkswagen"). Victim 9, the driver, reported that he had just parked his vehicle and was sitting in the driver's seat when two black males approached him. One suspect told Victim 9 to get out of the vehicle, while a second suspect pointed a black handgun at Victim 9. Victim 9 complied and began to get out of the car but was grabbed by a suspect and pulled away from the vehicle. All three suspects fled in the Volkswagen. Victim 9 described all of the suspects as black males in their late teens to early twenties, wearing black clothing and masks covering their mouths. Victim 9 reported that his iPhone was still inside the vehicle.

On February 5, 2021, at approximately 6:06 p.m., Co-Conspirator 1, **GREENE-PARKER**, and Co-Conspirator 2 carjacked at gunpoint Victim 10, who was driving a Lexus ES300 ("Lexus") in Silver Spring, Maryland. Victim 10 had made a deposit at an ATM and, upon returning to his vehicle, observed the Volkswagen parked next to his car. Co-Conspirator 1 and **GREENE-PARKER** approached Victim 10, displayed handguns, and demanded money, Victim 10's wallet, and Victim 10's keys. Co-Conspirator 1 approached Victim 10 first with a gun in his hand and stated, in sum and substance, "I'm gonna blow you up, give me your money and keys." **GREENE-PARKER**, who also was armed with a gun, approached Victim 10 and demanded his car keys. Co-Conspirator 2 was driving the Volkswagen. Fearing for his life, Victim 10 handed his property over. **GREENE-PARKER** drove Victim 10's Lexus away, while Co-Conspirator 1 got into the front passenger seat of the Volkswagen and fled the scene. A short time later the Lexus was located abandoned nearby.

Approximately two minutes after the carjacking of the Lexus, also in Silver Spring, Maryland, Co-Conspirator 1 and **GREENE-PARKER** approached Victim 11, who was sitting in a Mercedes ML350 sport utility vehicle ("Mercedes"). Co-Conspirator 1 ordered Victim 11 to "get out" while he pointed a firearm at her. Victim 11 exited in fear for her life, while Co-Conspirator 1 and **GREENE-PARKER** took Victim 11's vehicle and fled the scene. MCPD officers responded, interviewed Victim 11, and obtained and reviewed surveillance footage relevant to the carjacking involving the Mercedes.

At approximately 6:34 p.m. on February 5, 2021, **GREENE-PARKER** and Co-Conspirator 1 were observed arriving in and exiting the Volkswagen on surveillance video capturing the outside of **GREENE-PARKER**'s residence, an apartment building located in Washington, D.C. As the Volkswagen parked in front of the apartment building, the two occupants, **GREENE-PARKER** and Co-Conspirator 1, got out of the driver's side and passenger's side, respectively. They both entered the apartment building through the main front door. **GREENE-PARKER** and Co-Conspirator 1 were wearing the same clothing visible in the surveillance videos of the Silver Spring carjacking of the Mercedes less than thirty minutes prior and of the robbery of Business 1. Approximately three minutes after entering the building, Co-Conspirator 1 exited the main apartment building door and stood on the front porch. Co-Conspirator 1 removed a mobile phone from his pocket, smashed the phone on the concrete porch, and threw the phone in the front dirt or lawn area of the building. As discussed below, law enforcement recovered the smashed phone two days later and confirmed that it was the iPhone belonging to Victim 9 that Victim 9 had left inside of the Volkswagen.

Approximately 45 minutes later that evening, the carjacked Mercedes, which contained three occupants, arrived and parked in front of the Volkswagen. **GREENE-PARKER** and Co-Conspirator 1 exited the front door of the apartment building, went to the driver's side of the Mercedes, and spoke with the occupants. After a few minutes, the three occupants of the Mercedes exited the vehicle, entered the Volkswagen, and drove away. **GREENE-PARKER** and Co-Conspirator 1 then went back into the front door of **GREENE-PARKER**'s apartment building.

Later that evening, at approximately 8:33 p.m., officers with the Metropolitan Police Department ("MPD") observed the carjacked Volkswagen traveling in Washington D.C. After a vehicle pursuit, individuals including Co-Conspirator 2 bailed out of the vehicle in the 600 block of L St., NE, Washington, D.C. MPD located and arrested Co-Conspirator 2 in the area of the Volkswagen after an officer positively identified Co-Conspirator 2 as the driver of the Volkswagen during the pursuit. The Maryland license plate from the carjacked Mercedes was also located a short distance away.

On February 17, 2021, at 3:03 a.m., MCPD officers located the carjacked Mercedes in the parking lot of the apartment building where **GREENE-PARKER** resided in Washington, D.C. Later that evening, the Mercedes was recovered from the street in front of the building.

Late in the evening of February 26, 2021, **GREENE-PARKER** and Co-Conspirator 1 were 'livestreaming' and posting on Instagram about being at a hotel party in Arlington, Virginia. Law enforcement established surveillance on the hotel and eventually in the room next to **GREENE-PARKER** and Co-Conspirator 1. Law enforcement continued to monitor **GREENE-PARKER**'s Instagram account and were able to hear the 'livestreaming' in real time while in the room next door. Law enforcement observed on **GREENE-PARKER**'s Instagram the presence of semiautomatic handguns in the hotel room. **GREENE-PARKER** posted a video where he stated, "we the ones doing all the robberies." MCPD officers apprehended **GREENE-PARKER** and Co-Conspirator 1 in the hotel room. Prior to being apprehended, **GREENE-PARKER** threw a bag from the hotel room window. Law enforcement promptly recovered the bag. Its contents included two loaded firearms, specifically: (1) a Glock 22 semi-automatic pistol bearing serial number LXN466; (2) a Smith & Wesson Shield 40 semi-automatic pistol bearing serial number JFL2227; (3) 12 Winchester .40 caliber rounds of ammunition contained therein; and (4) 9 Federal .40 caliber rounds of ammunition also contained therein.

Businesses 1, 2, 3, and 4 conduct business in and affecting interstate commerce by, among other things, obtaining and selling goods that were manufactured outside of Maryland. Businesses 1, 2, and 3 are each part of national corporations that are headquartered outside of Maryland.

The Lexus was registered and maintained outside of Maryland and therefore traveled in interstate commerce prior to the carjacking that occurred on February 5, 2021. The Mercedes was purchased outside of Maryland and therefore traveled in interstate commerce prior to the carjacking that occurred on February 5, 2021.

## ARGUMENT

The Government submits that a sentence of 84 months concurrent on counts one and five, and 84 months consecutive on count six, is the appropriate term of imprisonment for the Defendant,

to be followed by 5 years of supervised release.

**I.      The PSR Accurately sets forth the Applicable Guidelines Range**

*Total Offense Level:*  The total offense level is 29. ECF No. 88 (PSR) ¶ 104.

*Criminal History Category:*  The Government agrees with Probation that the Defendant's Criminal History Category is I.  *Id.*

*Guidelines Range:*  The applicable guidelines range is 171-192 months' imprisonment.

**II.     A 168-month Sentence is Sufficient, But No Greater Than Necessary, <u>to Achieve the Goals of Sentencing.</u>**

The Government submits that, considering the factors listed in 18 U.S.C. § 3553(a), a 168-month term of imprisonment, to be followed by five years of supervised release, is a sufficient—but no greater than necessary—sentence for the Defendant.

A sentencing court must follow the three-step process set forth by *Gall v. United States*. *See* 522 U.S. 38 (2007).  First, the court must properly determine the Guideline range. *See id.* at 49 (citing *Rita v. United States*, 551 U.S. 338, 347-48 (2007)). Second, the court must determine whether to apply any of the guidelines' departure policy statements to adjust the Guideline range. *See id.* at 49-50. Third, the court must consider all the factors set forth in 18 U.S.C. § 3553(a) as a whole, including whether a variance—a sentence outside the advisory guideline system—is warranted. *See id.*

The statutory factors for the court's consideration under 18 U.S.C. § 3553(a) include: 1) the nature and circumstances of the offense and history and characteristics of the defendant; 2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public and provide the defendant with needed services; and 3) the kinds of sentences available and the need to avoid unwarranted sentencing disparities. "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the

5

background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4; *see also* 18 U.S.C. § 3661. "If the district court decides to impose a sentence outside the guidelines range, it must ensure that its justification supports 'the degree of the variance.'" *United States v. Evans,* 526 F.3d 155, 161 (4th Cir.), *cert. denied,* 555 U.S. 977, 129 S.Ct. 476, 172 L.Ed.2d 341 (2008) (quoting *Gall,* 552 U.S. at 51).

Applying this framework, taking into account the totality of the § 3553(a) factors, a 168-month sentence of imprisonment is sufficient, but no greater than necessary, for Mr. Greene-Parker. The nature and circumstances of Mr. Greene-Parker's offenses are set forth in the stipulation of facts above. Mr. Greene-Parker engaged in armed violence to rob and steal innocent people, sometimes in broad daylight. Mr. Greene-Parker posed a danger to the public while committing repeated carjackings and robberies with co-defendants and bragging about his violence on social media. He showed little caution and no regard for the consequences his actions had on his victims.

The Government's recommendation accounts for the history and characteristics of the Defendant. Mr. Greene-Parker's childhood and adolescence, as reported in the PSR, appear to be the picture of abandonment, combined with intellectual and behavior challenges, and even the trauma of abuse. Mr. Greene-Parker was clearly let down by those people and institutions that society expects to provide the foundation for a functioning adulthood. His presence in the criminal justice system, in light of his childhood, is tragically unsurprising. The challenge for the Court includes determining how that past is best accounted for in a sentence. While sympathy is more than justified, Mr. Greene-Parker's history and characteristics forecast continued public safety concerns if he were to be in the community. He has no GED, no work history, no stability, and no track record of successful acclimation to a law-abiding existence. While the sentence requested by the Government envisions Mr. Greene-Parker's release into the community when he is in his 30s, the United States Probation Office and those that would play a role in his successful re-entry into

the community have a daunting task in ensuring that Mr. Greene-Parker has the structure and support he needs to avoid returning to criminal conduct.  The sentence recommended by the Government duly considers the history and characteristics of the Defendant.

Additional factors under 3553(a) support the Government's recommendation.  The offenses set forth in the stipulation of facts are serious, demanding a significant sentence that would promote respect for the law.  The offenses require a sentence that provides just punishment for the harms perpetrated against numerous victims who happened to be in the wrong place at the wrong time, as Mr. Greene-Parker and his co-conspirators were near.  Given his lack of significant prior imprisonment, it is difficult to determine a term of imprisonment that would adequately deter Mr. Greene-Parker from engaging in future criminal conduct.  But ultimately, imprisonment for a term recommended by the Government would protect the public from further crimes while providing the Defendant with needed educational opportunity to get his GED, for example, and to improve his decision-making as he ages.

## **<u>CONCLUSION</u>**

For the reasons stated, as well as those presented at the sentencing hearing, the Government submits that a sentence of 168 months' imprisonment, to be followed by five years of supervised release, $4,850 in restitution, and a $300 special assessment is an appropriate disposition of this matter.

Respectfully Submitted,

KELLY O. HAYES
United States Attorney

By:      <u>/s/ Timothy F. Hagan, Jr.</u>
Timothy F. Hagan, Jr.
Assistant United States Attorney

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on this day, **May 13, 2025**, a copy of the foregoing Government's

Sentencing Memorandum was electronically filed and delivered via ECF to all counsel of record

in this matter.

 /s/ Timothy F. Hagan, Jr.
Timothy F. Hagan, Jr.
Assistant United States Attorney
